UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH KIEFER and DENISE KIEFER, | Case No. 12-10051 |
|         Plaintiffs, | Sean F. Cox |
| v. | United States District Judge |
| ABN AMRO, *et al.*, | Michael Hluchaniuk |
| | United States Magistrate Judge |
|         Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
<u>**MOTION TO DISMISS (Dkt. 6**</u>)

**I.  PROCEDURAL HISTORY**

Plaintiffs filed a complaint in Oakland County Circuit Court on December 9, 2011, in an action to quiet title.  (Dkt. 1).  On January 5, 2012, defendants caused the action to be removed to Federal District Court on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *Id*.  Defendants CitiMortgage, Inc. (CMI), individually and as successor by merger to ABN AMRO Mortgage Group, Inc. (ABN AMRO), and the Federal Home Loan Mortgage Corporation (Freddie Mac) filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 23, 2012.  (Dkt. 6).  This motion was referred to the undersigned on March 5, 2012, by District Judge Sean F. Cox.  (Dkt. 7).  Plaintiffs filed a response in opposition to this motion to dismiss on March 12,

2012. (Dkt. 8). Defendants filed a reply to plaintiff's response on March 26, 2012. (Dkt. 10). Pursuant to notice, a motion hearing was held regarding defendants' motion to dismiss on May 2, 2012. This matter is now ready for report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiffs' complaint be **DISMISSED** with prejudice.

## II.   FACTUAL BACKGROUND

The basic factual background is uncontested. The case involves real property located at 4635 White Oak Court, Clarkston, Michigan. On March 22, 2004, plaintiffs Denise M. Kiefer and Kenneth D. Kiefer closed a mortgage loan in the amount of $248,000 with defendant ABN AMRO as a refinance on the property. (Dkt. 6, Ex. 2). As security for the loan, plaintiffs executed a promissory note (Dkt. 6, Ex. 3) and a mortgage (Dkt. 6, Ex. 3). The mortgage was recorded with the Oakland County Register of Deeds on March 31, 2004. (Dkt. 6, Ex. 2). On August 21, 2007, defendant CMI merged with defendant ABN AMRO, with CMI as the successor corporation. (Dkt. 6, Ex. 4).

On June 27, 2007, plaintiffs executed a home equity line of credit mortgage (HELOC) in the amount of $94,000 with Citibank. (Dkt. 6, Ex. 5). The HELOC was secured by another mortgage on the property. (Dkt. 6, Ex. 5, Ex. 6). At this

time, plaintiffs also entered into a home equity line of credit agreement and disclosure (HELOC Agreement). (Dkt. 6, Ex. 6). The HELOC was recorded with the Oakland County Register of Deeds on August 8, 2007. (Dkt. 6, Ex. 5). The basis of plaintiffs' claim arises from the alleged securitization[1] of the mortgage and the HELOC. Plaintiffs assert that they became aware that the lenders' security interests had been transferred or assigned a number of times to various entities without being recorded. (Dkt. 1, 19-28). Plaintiffs claim that they sent to defendant CMI qualified written requests (QWRs) on January 6, February 5, and March 9 of 2011, in order to determine those entities that presently held a security interest in the mortgage. *Id*. at 29. When they received no response, plaintiffs hired William McCaffrey to conduct a securitization audit in order to determine the holder of the promissory note, mortgage, and HELOC. *Id*. at 32. The results of this audit purport that plaintiffs' mortgages were being held in trust (Freddie Mac Multiclass Certificates), with the Bank of New York Mellon acting as trustee and CMI acting as servicer. (Dkt. 8, Ex. 1 at 2:18-3:5). The audit concludes that defendants CMI, Freddie Mac, and Bank of New York Mellon are not current

---

[1] "Securitization" refers to the process by which a mortgage note is purchased from a bank, mortgage company, or other originator and consolidated into a "pool," along with many other individual mortgages of similar characteristics. The purchaser then securitizes the pool by issuing securities backed by the mortgage debts (mortgage-backed securities), which represent claims on the principal and interest payments made by borrowers on the loans in the pool.

holders in due course because they do not fall within any of five enumerated categories of valid holders. *See id*. at 3:7-28. No further information or explanation is proffered in support of this conclusion.

At present, there is no foreclosure proceeding pending, nor, according to plaintiffs' counsel, are they in arrears on their payments. Plaintiffs have initiated the instant action to quiet title in order to "remove the invalid interests of Defendants in their property." (Dkt. 8 at 6). However, they claim that they do not "seek to avoid any obligation," but rather, "seek to determine to whom they owe these obligations under the UCC and to eliminate invalid mortgage interests encumbering their property." *Id*. at 6-7. Plaintiffs claim that any and/or all of the defendants' interests in their property are invalid for the following reasons: (1) errors in the securitization process severed the promissory note from the mortgage; (2) the failure of the defendants to record each assignment; (3) unspecified violations of the pooling and servicing agreements (PSAs) severed the promissory note from the mortgage; and (4) unspecified violations of Articles 3 and 9 of the Uniform Commercial Code. (Dkt. 1 at 44).

In response, defendants argue that (1) plaintiffs cannot make out a *prima facie* case of quiet title because they have identified no reason that they are entitled to the property free and clear of any encumbrance; (2) plaintiffs lack standing to challenge any alleged assignment or transaction to which they are not

parties; and (3) CMI is the current mortgagee on record. (Dkt. 6).

### III. ANALYSIS AND CONCLUSIONS

#### A. Standard of Review

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S., 544, 570 (2007). A claim that is plausible "pleads factual content that allows the court to draw the reasonable inference" and demonstrates "more than a sheer possibility" that the plaintiff's claim has merit. *Id*. A complaint that offers "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id*. While a court must accept as true all factual allegations set forth in a plaintiff's complaint, it is not bound to accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *Id*. All legal conclusions must be supported by the factual allegations. *Id*. at 679.

In deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In the instant case, defendants dispute plaintiffs' incorporation by reference of the McCaffery affidavit. Much of the information contained within this affidavit is comprised of legal conclusions (e.g., "The only potential holder in due course of a note falls within one or more of the following classifications . . . . CitiMortgage, Bank of New York Mellon, Freddie Mac and their successors in interest do not fall within any of the classifications of holders in due course."). Regardless of the existence of the affidavit when the complaint was filed, when only its factual allegations are considered, defendants' position is not prejudiced because the affidavit contains so few facts beyond those elucidated in the complaint.

B. <u>Quiet Title</u>

An action to quiet title is designed to effect a removal of a cloud on title to real property through a judgment that such property is free of any conflicting claims. *Ballentine's Law Dictionary* (3d ed. 1969). The burden of proof in an action to quiet title initially rests with the plaintiffs to demonstrate their title to the property. *Beaulah Hoagland Appelton Qualified Pers. Residence Trust v. Emmet County Rd. Comm'n*, 236 Mich.App. 546, 550 (1999). In order to carry this burden, a plaintiff's complaint must allege: (1) the interest the plaintiff claims in the premises; (2) the interest the defendant claims in the premises; and (3) the facts establishing the superiority of the plaintiff's claim. *See* M.C.R. 3.411 (1985). If a

plaintiff successfully carries this burden, it then shifts to the defendant to demonstrate his superior interest or title. *Hoagland*, 236 Mich.App. at 550. Here, plaintiffs attempt to obfuscate the third element by claiming that defendants' interests in the property are invalid, and thereby are inferior to plaintiffs' own interests. However, plaintiffs admit in their complaint and briefs that they executed a mortgage and a HELOC in the amounts of $248,000 and $94,000, respectively. Plaintiffs do not allege that they have fully repaid or satisfied this indebtedness, nor have any of the lenders discharged the debt. Both the mortgage and the HELOC agreements specify that the encumbrances on plaintiffs' property are not to be discharged until payment of all sums secured by plaintiffs' property is remitted. (Dkt. 6, Ex. 2, Ex. 5). These facts have been sufficient in previous cases to undermine a claim to quiet title. *See e.g.*, *Leone v. Citigroup, Inc.*, 2012 U.S. Dist. LEXIS 61411 at *8 (E.D. Mich. 2012) ("Because the indebtedness has not been fully paid, the mortgage remains a valid encumbrance on the property. Thus, plaintiff cannot state a plausible claim for relief to quiet title."); *Stafford v. Mortgage Elec. Registration Sys., Inc.*, 2012 U.S. Dist. LEXIS 61413 at *10-11 (E.D. Mich. 2012).

    The foregoing facts are enough to justify a dismissal of the case. However, the undersigned will address plaintiffs' challenges to the validity of defendants' interests in the property. As a preliminary matter, it is necessary to address the

issue of standing. Defendants are correct in their assertion that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." *See Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 Fed.Appx. 97, 102 (6th Cir. 2010); *see also Bowles v. Oakman*, 246 Mich. 674, 677-78 (1929). However, the Sixth Circuit also reasoned that an obligor does have standing to challenge a void (as distinguished from voidable) assignment where he is at risk of being subjected to double liability on the debt. *Livonia*, 399 Fed.Appx. at 102. Such an obligor may defend himself in a foreclosure action on the bases, for example, of the nonassignability of the instrument, the assignee's lack of title, or a prior revocation of the assignment. *Id*.

In the present case, plaintiffs do not contend that the debt was nonassignable, that any of the defendants lacked title at the time the assignments took place, or that any of the assignments had been previously revoked.[2] Rather, their claims stem from the specific terms of securitization and trust agreements and PSAs. In such circumstances, plaintiffs "[do] not have standing to go beyond the statutory requirements to inspect each and every contract or agreement between any predecessor and successor mortgagee, searching for 'irregularities' and

---

[2] In *Livonia*, the court also found that the plaintiff was not at risk of double liability on the debt because the defendant had established that it held the original note at the time of the litigation. *See* 388 Fed.Appx. at 102. Here, defendants assert that the mortgage has not been assigned and that CMI is the current mortgagee of record on the mortgage due to its merger with ABN AMRO.

noncompliance." *Stafford*, 2012 U.S. Dist. LEXIS 61413 at *6, quoting *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 735 (E.D. Mich. 2010), aff'd 399 Fed.Appx. 97 (6th Cir. 2010). Even though plaintiffs seek only to examine the defendants' rights and interests in the indebtedness and not "to enforce the PSAs or obtain any rights under it," distinguishing these purposes makes no difference. *See id*. at 103 (denying the plaintiff standing to challenge an assignment, even where the challenge was "not meant to 'challenge the underlying obligation,' but rather to challenge the record chain of title."). Therefore, plaintiffs do not have standing to challenge the validity of defendants' security interests on the basis of the PSAs, securitization agreements, or other transfers.

Assuming that plaintiffs did have standing to challenge these matters, the result of this motion to dismiss would not differ. First, it is well-settled in Michigan law that securitization of a mortgage does not invalidate the interests in the indebtedness. *See Residential Funding Co. LLC v. Saurman*, 490 Mich. 909, 910 (2011); *see also Leone*, 2012 U.S. Dist. LEXIS 61411 at *9. Plaintiffs' theory that the promissory note was severed from the mortgage has no merit, as "the note and the mortgage are to be construed together." *See Saurman*, 490 Mich. at 909. Furthermore, "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure

obligations, and *the trust and the beneficial interest need not be in the same hands* ... . The choice of a mortgagee is a matter of convenience." *Id*. at 910, quoting *Adams v. Niemann*, 46 Mich. 135, 137 (1881) (emphasis added). This theory is particularly true in the present case because in both the mortgage and the HELOC agreements, plaintiffs expressly granted to ABN AMRO, Citibank, and their successors or assigns the power of sale of the security interests. (*See* Dkt. 6, Ex. 2, Ex. 5).

Second, to the extent that plaintiffs challenge the validity of the mortgage on the grounds that the transfers were unrecorded, this claim must fail. The Michigan Supreme Court has noted that "the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security." *Saurman*, 490 Mich. at 910. Thus, the validity of the security interests must likewise be unaffected by an unrecorded transfer or assignment. Plaintiffs have failed to identify any legal authority to the contrary.

Third, plaintiffs have failed to allege facts regarding the alleged violations of the PSAs sufficient to sustain a plausible claim to quiet title. Plaintiffs have not specified the terms of the PSAs and allege only that endorsements in blank of the mortgage and HELOC have somehow violated them. Moreover, the undersigned agrees with defendants that the non-binding case law cited by plaintiffs on this score serves only to emphasize the fact that even if one or more of the defendants

had invalid security interests, this does not mean that the mortgage indebtedness evaporates. (Dkt. 8, Ex. 2). Plaintiff's property would remain encumbered by the mortgage and HELOC. While plaintiffs claim that they do not seek to avoid their mortgage obligations, such is the nature of an action to quiet title - that is, to clear title to property in one's own favor.

Finally, plaintiffs have failed to allege facts regarding the alleged violations of the Uniform Commercial Code sufficient to sustain a plausible claim to quiet title. Again, the plaintiffs have specified neither the provisions of the UCC that have been violated (beyond the very broad designation of Articles 3 and 9), nor the specific errors in the securitization process that have allegedly violated the UCC. To the extent that plaintiffs claim that the securitization process in general severs the note from the mortgage, thereby violating the UCC, these matters have been addressed *infra*. As such, plaintiffs have not met their burden in making out a plausible claim of quiet title.

## IV.  RECOMMENDATION

Given the above conclusions, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiffs' complaint be **DISMISSED** with prejudice

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 12, 2012                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on June 12, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Patrick J. Politano, Kyle R. Dufrane, and Lauren M. Phillips</u>.

                                              <u>s/Tammy Hallwood</u>
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov